## Case No. 18,079.

### WRIGHT v. FULLERTON.

[2 Biss. 336;[1] 3 Am. Law T. Rep. U. S. Cts. 124; 2 Chi. Leg. News, 301.]

Circuit Court, N. D. Illinois.    June, 1870.

BOND TO CONVEY LAND — LACHES IN ENFORCEMENT.

1. A bill in equity cannot be maintained upon a bond for the conveyance of real estate executed and delivered more than twenty years previously, the obligor having soon afterwards repudiated its obligation and thenceforth treated the land as his own and the complainant having in the meantime made no effort to enforce his rights.

2. The fact that he considered the bond worthless, did not suppose that he could collect anything from the defendant, and was not aware that he had any rights under it until advised by counsel, do not form a sufficient excuse for his laches.

3. Seymour v. Freer, 8 Wall. [75 U. S.] 202, distinguished: in that case both parties continued their relations under the contract, whereas, in this case one of them denied the claim of the other.

This was a bill filed by the complainant to enforce his equitable rights under a bond made by the defendant to one Albert Shephard, dated October 31, 1835, in the penal sum of $441, with a condition concerning the conveyance of three certain tracts of land therein described. The bond was assigned by Shephard to the complainant on the 4th of March, 1836. The controversy covered two tracts of land in Cook county, Illinois: The E. ½ of the N. E. ¼ of Sec. 32, T. 38, N. R. 14, E. of 3d P. M., entered by Abner Lane; and the W. ½ of the same section, entered by Albert Shephard; the certificates for each having been assigned to the defendant in June, 1835. Also one tract of land in Milwaukee county, Wisconsin, the S. W. ¼ of Sec. 17, T. 7, N. R. 22, E. of 4th P. M., entered by Shephard, and conveyed to defendant by deed October 31, 1835. Patents were duly issued by the United States on each of these entries, the purchase money being paid by defendant. The condition of the bond was as follows: "Whereas said Shephard has executed three notes to said Fullerton, as follows, to-wit: one dated June 27, for $100, payable one year from date, with interest at the rate of twelve per cent.; one for $100 dated August 22, 1835, payable one year after date, with like interest; and one for $70.50, dated July 1, 1835, payable one year from date, with like interest, it being one-half the purchase money advanced by the said Fullerton for the purchase of (the foregoing tracts of land). Now, upon the payment of said notes as aforesaid, the said Fullerton agrees to execute to said Shephard a conveyance of one undivided half of said lots of land, or in case said lots of land shall have been sold, to pay said Shephard one-half the proceeds."

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

This bond was signed and duly acknowledged by the defendant. On the 24th of June, 1836, the defendant sold one undivided half of the Milwaukee land for four drafts on New York for $1800, each payable at four, nine, twelve and eighteen months, respectively. Only one of these drafts—the first—was ever paid. When the first note named in the bond became due, the defendant said the amount was tendered by the complainant, and refused. After the last note fell due—some time in the fall of 1836—the complainant declared that tender was made of the whole amount due, and refused. The defendant denied this. The only reasons given why the tender was refused on the part of the complainant were, because the defendant demanded twenty-five per cent. interest; on the part of the defendant, because the whole amount was not paid at maturity. The only other transaction the defendant and the complainant appear to have had with each other afterwards, was this: In 1835 they and one Royal Stewart and Grant Goodrich, for the sum of $35,000, purchased block 1 of the original town of Chicago. They paid one-fourth of the purchase money, and gave a mortgage on the block for the balance. They then sold lots, and made considerable improvements on the property. They were unable to pay the balance, and the mortgage was foreclosed, and the property lost. Those who had purchased lots from them made reclamations for the money, etc., they had paid. Stewart and the complainant left Chicago, and the defendant and Goodrich had to compromise and settle these claims. A litigation of several years standing grew out of the failure of the parties to make titles to lots which they had sold, and this was maintained and finally settled by the defendant and Goodrich alone—Stewart and the complainant being residents of other states. In the meantime the complainant never moved in the matter of this bond, nor made any claim in relation to it until the bill was filed on the 22d of August, 1856, just twenty years from the maturity of the last note named in the bond. During all this time the defendant exercised control and ownership over the land, and paid the taxes. The reasons stated by the complainant for this long delay in prosecuting the claim set forth in his deposition as follows: He considered the bond worthless; he was told nothing could be collected from the defendant in 1840, 1841, and "along in those years;" that the defendant had put his property out of his hands; that the bond did not set out the state in which the lands were situate, and he did not know he had any rights till advised by counsel just prior to filing the bill.

Doolittle & Morris, for complainant.
Beckwith, Ayer & Kales, for defendant.

DRUMMOND, Circuit Judge. Perhaps the fair inference from the facts is, that Shephard had attended the sales of the lands, and had made selections, or had done something else in relation to the land, or for the defendant, in consideration of which, while the latter had paid all the purchase money, he agreed that the complainant might have one-half of the land, on reimbursing him one-half of the purchase money, with a certain interest. Shephard himself, though he appears to be living, was not a witness in the case, and the proof as to the particular circumstances of the arrangement between Shephard and the defendant seems to be confined almost entirely to the documentary evidence, viz.: the bond itself, and the assignments and conveyances affecting the land.

Giving to these documents the construction most favorable to the complainant, I am of the opinion that he has slept too long upon his rights to permit him now to call upon a court of equity to enforce them. He was clothed with the equities of Shephard under the bond, on the 4th of March, 1836, more than twenty years before he filed his bill. Conceding that he stood in all respects in the place of Shepard, then upon payment of the notes as they fell due, he was entitled to a conveyance of one-half of the land, or if sold, to one-half of the proceeds. Taking either aspect of the case, as presented in the evidence, the result must be the same. If it be true that when the first note fell due payment was tendered by the complainant and refused, that was a denial of the right of the complainant pro tanto, under the contract. If, in the fall of 1836, the whole amount due on the three notes of Shephard was tendered and refused, that was a denial of the whole contract. Then, if we take the statement of the complainant, denied by the defendant, as true, in the fall of 1836 he knew that the defendant, from some cause, repudiated the obligation of the contract. Whether, on this hypothesis, the first and only payment on the sale of the undivided half—which the defendant claims was his own half—of the Milwaukee land, was at that time made, we do not know, but the complainant then had notice that the defendant repudiated his claim under the contract. Being thus met by the defendant, he submitted to that repulse without a motion to enforce it, for nearly twenty years. It is a fair inference, I think, that he acquiesced in the action of the defendant. Whatever view, therefore, we may take of the legal status of the parties under the facts, in 1836 a claim was made on one side, and refused or resisted on the other, and so, without a word further, the matter rested till Aug. 22, 1856.

The inference becomes irresistible when connected with circumstances already mentioned, and with others which may be referred to. The defendant treated the land thenceforth as his own, paid the taxes, disposed of some portion, has always retained a part of it down to the present time, and during all the time has been a resident of Cook county, Illinois, while the complainant in

1835 and 1836, and for a few years afterwards, was also a resident of Cook county, and then removed to Racine, Wisconsin, where he has ever since resided. Shortly after 1836, real estate greatly depreciated in value here, and so continued for several years. In 1856, when the bill was filed in this case, land had greatly risen in value. In addition to all this, the purchasers of block one in the original town of Chicago, of whom the complainant and defendant were two, had sold several lots of that block, and had received considerable sums of money, amounting to some thousands of dollars—a large part of which had been put in improvements on the block, and when, having lost all under the mortgage given to secure the three-fourths of the purchase money, they were called on to refund sums that had been paid them, the complainant was not here, and therefore, as years passed by, and nothing was said or even hinted by him of the bond of October 31, 1835, it is not impossible that his non-action may have been the result, in part at least, of the complications growing out of the liabilities incurred in relation to block one, and of the fear, if any claim were made under that, he might be met with a counter-claim. However this may be, the complainant rested till the statute of limitations had run against the notes to Shephard and the bond of the defendant, and having been silent so long, he cannot be heard now.

It has been said by the complainant's counsel, that this case is similar to the case of Seymour v. Freer, decided by this court [unreported], and afterwards affirmed by the supreme court of the United States (8 Wall. [75 U. S.] 202). In some respects this case is like that, but if it were conceded that in substance the nature of the contract was the same, it must be borne in mind that the supreme court put the decision in Seymour v. Freer on the ground that nothing had ever been waived or lost by Price under the original contract. The language of the opinion of a majority of the court is: "The devisees might have held the property, and denied that, under the circumstances, the trust subsisted any longer. If Price acquiesced, his rights would have been at an end. Price might also have expressly or tacitly abandoned his claim. This would have worked the same result. Both parties might have concluded to continue their existing relations. * * * Was either of the alternatives adopted, and if so, which one? This is the turning point in the case." And because the court was of opinion that both parties continued their existing relations, the original contract was held to govern their rights. If that were true here, the decision would necessarily be the same, but it is because one of the parties here signified his purpose to deny the claim under the original contract, and the other submitted thereto for nearly twenty years, that this court must treat the contract as the parties themselves treated it—as obsolete.

I have not referred to the circumstance of the case having been permitted to stand in court for so many years without action, even after the bill was filed, because this may have been with the acquiescence of the defendant or his counsel.

The bill will be dismissed.

NOTE. This case was appealed to the supreme court, and the decree below affirmed by a divided court, no opinion being filed, and the case not reported. Courts of equity will not aid in enforcing stale claims where the party has slept upon his rights. Platt v. Vattier, 9 Pet. [34 U. S.] 405; Hawley v. Cramer, 4 Cow. 717; McKnight v. Taylor, 1 How. [42 U. S.] 161; Bowman v. Wathen, Id. 189. The lapse of twenty years ordinarily operates as a bar to a suit in equity connected with the recovery of land. Varick v. Edwards, 1 Hoff. Ch. 382; Pipher v. Lodge, 4 Serg. & R. 310. As to when a vendee may bring his bill for specific performance, and what laches will stop him, consult Peters v. Delaplaine, 49 N. Y. 362.